UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: ) | |
| ) | |
| BALL FOUR, INC. ) | Case No. 10-33952 EEB |
| a Colorado Corporation ) | Chapter 11 |
| EIN 84-0992964 ) | |
| ) | |
| Debtor. ) | |

**OBJECTION TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO CONVERT CASE TO A CASE UNDER CHAPTER 7**

Debtor-in-Possession, Ball Four, Inc. ("Debtor"), through its counsel, Weinman & Associates, P.C., objects to the Motion to Dismiss, Or In the Alternative, Motion to Convert Case to a Case Under Chapter 7 ("Motion") filed by FirsTier Bank ("Movant") as follows:

I. PROCEDURAL IMPROPRIETY

1.  A change in the bankruptcy rules has allowed for motions to dismiss Chapter 11 cases to be handled, essentially, the same way that motions for relief from stay are handled under the rules. Accordingly, motions to dismiss Chapter 11 cases are afforded an expedited procedural posture and the rules relating to the preliminary hearing and any possible final hearing are governed specifically by Local Rule 2081-3.

2.  In the instant case, Movant has combined a motion to dismiss with a motion to convert. There is no comparable expedited procedural method for expediting motions to convert and thus, the Motion and the notice procedures are improper. The Bankruptcy Court would not entertain a motion for relief from stay combined with a request for any other relief and allow the same to be treated under the rules relating to relief from stay. Similarly, motions to dismiss and the expedited procedural requirements are *sui generis* and therefore may not be joined with motions to convert.

3.  Accordingly, Debtor asserts that the Motion, as filed, cannot be prosecuted under the procedure chosen by Movant and established by the Court for pure motions to dismiss. Thus, Debtor requests that the Movant be required to re-notice the Motion under the appropriate rule and forego the expedited procedure set forth in Local Rule 2081-3, or that the Motion be denied on this procedural basis without prejudice.

II. ARGUMENT

4. It is clear from the Motion that Movant has sought to fit a square peg into a round hole. Movant alleges that Debtor's case is filed in bad faith, and lists a number of reasons why.

5. Nowhere in the Motion, however, is there reference to the seminal cases in this district relating to bad faith filings or the elements detailed in these cases as to the framework for analyzing a bad faith filing. The foregoing notwithstanding, there is no basis to dismiss the within case for bad faith reasons as almost none of the elements of bad faith is even applicable to the instant case and consideration of the totality of the circumstances does not warrant a finding of bad faith.

### A. Legal Standard

6. Whether a bankruptcy case has been commenced in bad faith is determined on a case by case basis upon the specific facts in a case, but ultimately rests on the sound discretion of the Bankruptcy Court. *In re Gunnison Center Apartments, LP*, 320 B.R. 391, 399 (Bankr. D. Colo. 2005); *Little Creek Dev. Co. v. Commonwealth Mortgage Corp. (In re Little Creek Dev. Co.)*, 779 F.2d 1068, 1072 (5th Cir.1986). Although the courts have enumerated numerous factors in determining whether bad faith exists, "[i]ndividual factors, in and of themselves, may not lead to a conclusion that a bankruptcy filing is in bad faith." *Id.* at 399; see also *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir. 1996).[1]

7. A determination of this factual issue "is the result of the court's consideration of the totality of circumstances, including the timing of the filing of the bankruptcy petition, the debtor's honesty and candor and its ability to reorganize." *In re Pacific Rim Investments, LIP*, 243 B.R. 768, 773 (D. Colo. 2000); see also *In re Gunnison Center Apartments, LP*, 320 B.R. at 399 ("Bad faith is found when the cumulative effect of these individual factors together paint a factual picture that leads to the inescapable conclusion that use of the bankruptcy laws by the debtor is inappropriate."); *In re Little Creek Dev. Co.*, 779 F.2d at 1072-73 (findings of lack of good faith are predicated on certain recurring but non-exclusive patterns, and are "based on a conglomerate of factors rather than on any single datum"). "None of these factors is dispositive." *In re Gunnison Center Apartments, LP*, 320 B.R. at 399.

8. Additionally, the burden of proof to show cause for dismissal of a Chapter 11 bankruptcy based upon bad faith rests on the movant by a preponderance of the evidence. *In Re Capitol Food Corp. of Fields Corner*, 490 F.3d 21, 24 (1st Cir.

---

[1] Factors that various courts have found helpful in determining whether or not a Chapter 11 case has been filed in good faith include: (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are relatively small compared to the claims of the secured creditors; (3) the debtor has no employees; (4) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (5) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has little or no cash flow. *Udall v. FDIC (In re Nursery Land Dev., Inc.)*, 91 F.3d 1414, 1416 (10th Cir. 1996) (citations omitted).

2007) (demanding creditor make a prima facie showing of bad faith); *In re Forest Hill Funeral Home & Memorial Park*, 364 B.R. 808, 819 (Bankr. E.D. Okla. 2007). Once the movant makes a *prima facia* showing that the petition was filed in bad faith, the debtor then carries the burden to prove the petition was filed in good faith. *In re Fraternal Composite Service, Inc.*, 315 B.R. 247 (Bankr. N.D.N.Y. 2003); *In re Nichols*, 223 B.R. 353, 355 (Bankr. N.D. Okla. 1998).

### B. Bad Faith

9. In this case, the Movant has merely provided a recitation of the factors. It has not satisfied its burden to prove by a preponderance of the evidence that Debtor's Chapter 11 petition was filed in bad faith. Indeed, there is no basis to dismiss the within case under §1112 of the Bankruptcy Code. Moreover, a cursory review reveals only one factor that may apply in this matter, pre-petition conduct, and that factor is explained by a forthcoming adversary proceeding. The remaining factors either do not apply or are inapposite to the case at bar. As such, the totality of circumstances in this matter weighs heavily in favor of the Court denying the Movant's Motion to Dismiss.

10. Movant asserts that Debtor's purpose in filing the bankruptcy was not due to concerns for the value of the property, preservation of necessary assets, orderly liquidation of assets or for protection of equity for unsecured creditors. Nothing could be further from the truth. The sole purpose in filing the bankruptcy was to preserve the real estate which has a value of four to five times what Movant is owed and a nascent ongoing business which has extraordinary potential. Indeed, as set forth below, the performance of Debtor during just the first 68 days of this Chapter 11 case has resulted in net income of $131,000.

11. Next, Movant asserts that Debtor's purpose in filing the bankruptcy was to stay the legitimate efforts of Movant from enforcing its rights to foreclose a deed of trust. Unquestionably, one of the purposes of the bankruptcy filing was to stay a foreclosure; however, in and of itself, that is not a basis for dismissal of a Chapter 11 case. If that were the law, virtually every Chapter 11 case would be dismissed, as many reorganizations are precipitated by a secured creditor's commencement of a foreclosure action. In fact, the courts in this district have repeatedly found that Chapter 11 reorganizations are not inherently improper even when the Chapter 11 petition is filed shortly before or after a foreclosure proceeding is commenced. *In re The Chisholm Co.*, 166 B.R. 706, 717 (D. Colo. 1994); *In re Kasdorf*, 64 B.R. 294, 295 (Bankr. D. Colo. 1986) ("Filing of bankruptcy petition on eve of foreclosure did not evidence bad faith sufficient to warrant dismissal of Chapter 11 case…"); *see also In re 9281 Shore Road Owners Corp.*, 187 B.R., 837, 855 (E.D.N.Y. 1995) (finding that "[i]n the usual scenario, Chapter 11 is triggered when the mortgagee commences a foreclosure action, and the debtor attempts to obtain a stay in the Bankruptcy Court"). Moreover, Debtor alleges that there is some question as to the

legitimacy of the amount claimed to be owed by Debtor to Movant, which is best resolved in the bankruptcy case.

12. Movant alleges that Debtor is likely unable to effectuate a Plan of Reorganization. This is the most obvious example of trying to place a square peg in a round hole. Since the date of the filing, Debtor has generated $105,000 of net income through the end of October and an additional $26,000 of net income through the month of November. Debtor has accumulated in excess of $165,000 of cash through November. Debtor's performance in just the first 68 days of the bankruptcy suggests that not only is Debtor likely to be able to effectuate a Plan of Reorganization, but it is almost certain that such a Plan would be feasible.

13. Next, Movant argues that Debtor does not have tangible proof and/or adequate accounting or financial records evidencing its ability to reorganize. This allegation is sheer fantasy. Mr. Gentry, Debtor's principal, is a trained accountant, who acted as such for seven years for a Colorado accounting firm. Debtor's books and records are meticulous. Debtor maintains ledgers, trial balances and balance sheets, has timely filed tax returns, maintains all receipts and disbursement documentation, maintains a filing system for accounts payable, and has paid all taxes including 940's, 941's, state withholding and other taxes timely.

14. While it may be true that Debtor maintains its books and records manually, there is nothing wrong with that practice particularly since the information kept is accurate and available. It is unclear on what grounds or factual basis this allegation rests, but it is simply wrong.

15. Movant blithely argues that Debtor's pre-petition conduct in failing to pay on the subject note and deed of trust over a period of one year is improper. As other court's have recognized, "a debtor's pre-petition conduct is but one element" and bankruptcy courts must look to the totality of the circumstances in determining a debtor's good faith. See *In re Lofty*, 437 B.R. 578, 586 (Bankr. S.D. Ohio 2010) (analyzing a debtor's good faith filing of a Chapter 13 petition) (citing *Metro Employees Credit Union v. Okoreeh-Baah (In re Okoreeh-Baah)*, 836 F.2d 1030, 1033 (6th Cir.1988)). While, arguably, failing to pay on a note is a default, there is hardly anything improper about it in the context of a motion to dismiss. As noted above, a Chapter 11 Debtor should not have its case dismissed simply because it has failed to pay its debts.

16. More importantly, however, Debtor has disputed the debt for one year and alleges that Movant's handling of its construction loan was improper in many respects. In fact, the Motion completely ignores the legal ramifications of Movant's own pre-petition conduct which includes payments to contractors in direct contravention of Debtor's explicit instructions and payments to subcontractors despite having knowledge of labor disputes causing Debtor to lose all leverage in negotiations with those subcontractors. Specifically, Movant disbursed funds to the subcontractors

4

    who installed a faulty roof and installed the wrong turf.  As a direct result of Movant paying these subcontractors without approval and over the express objection of the Debtor, Debtor's business has been and is continuing to be damaged.  Movant's pre-petition conduct in this regard constitutes a prior material breach of contract which excused Debtor's continuing obligations to perform under the Note in question. (*See Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981)( "If one party has failed to performance the bargained for exchange, the other party may be relieved of a duty to continue its own performance.")

17. As a result of Movant's improper pre-petition conduct, Debtor will be commencing an Adversary Proceeding to address these issues.  Therefore, Debtor's forthcoming adversary complaint, which will seek to legally validate Debtor's failure to pay on the subject note and deed of trust for over a one year period year, is sufficient evidence to satisfy Debtor's burden to prove the petition was filed in good faith.  *See  In re Tekena USA, LLC*, 419 B.R. 341, 347-48 (Bankr. N.D. Ill. 2009) (finding the existence of an adversary complaint against the debtor is evidence of debtor's improper pre-petition conduct).

18. Movant further argues that it is Debtor's primary creditor and that Debtor remains current with its trade vendors for its operations at the real property.  In some respects, this allegation is true, but in essence, it is irrelevant.  Because of the Movant's handling of the construction loan, there are approximately $200,000 of claims by sub-contractors which Movant insisted be paid without the authority of Debtor and whose work was faulty or improper.  Movant's negligent and improper handling of the construction loan is the reason for the approximately $200,000 in debt, which is hardly insignificant.

19. Movant next argues that the Chapter 11 filing was not made in good faith.  Of course, this is conclusory statement which is refuted by the foregoing and what follows.  In particular, Debtor has undertaken a new business with enormous promise which is being realized almost immediately.  Also, Debtor disputes Movant's good faith in dealing with it throughout the lending process.

20. Movant asserts that Debtor does not have a reasonable likelihood of rehabilitation.  As already stated above, there is every reason to believe that Debtor will be able to reorganize, and within a reasonable period of time.  Debtor believes that it will have on file a Plan of Reorganization and Disclosure Statement prior to the end of the exclusive period, and likely before any final hearing on this matter.

21. Incredibly, Movant argues that there has been an unreasonable delay by Debtor that is prejudicial to Movant.  This allegation is somewhat hard to fathom.  Debtor had been in bankruptcy for all of 75 days when the Motion was filed, approximately 30 of which was consumed with negotiations with Movant.  The first 30 days were dedicated to preparing Statements and Schedules, attending an Initial Debtor Interview and attending a §341 Meeting of Creditors and Status & Scheduling

Conference. This allegation is simply another example of attempting to stick a square peg in a round hole and is a rote recitation without any factual underpinning.

22. Similarly, Movant argues that any Plan that Debtor might be able to formulate would not be in the best interest of the creditor (assuming this means FirsTier Bank) or the estate. No explanation is given for this allegation, but it is hard to comprehend that under the circumstances of this case there could be any merit to this claim. As already noted above, Debtor has been exceedingly successful in its new venture and there is no sign that this success will not continue into the indefinite future. As will be seen in the Plan to be filed with the Court, Debtor intends to pay all creditors in full with interest. To be sure, Debtor does not believe it owes Movant what Movant has alleged, but Movant will be paid everything to which it is entitled as determined by the Court.

23. Again, without any factual basis, Movant alleges that Debtor has failed and refuses to provide documents to support the nature and extent of its current cash flow, the terms and conditions of its recently acquired on sight gaming license, and any liabilities associated therewith and how such license was obtained. Taking each allegation separately, Debtor responds as follows:

   a. Debtor has filed and continues to file Monthly Operating Reports which provide any and all required or necessary information to support the nature and extent of its current cash flow, liabilities, and operations. Similarly, Debtor has filed Statements and Schedules;

   b. At a settlement conference held between Debtor and bank representatives as well as their respective attorneys, the Bank inquired about the onsite gaming license which was e-mailed to counsel for Movant, printed by counsel for Movant and discussed by the parties at the settlement conference. This allegation is, to put it charitably, erroneous;

   c. The allegation that Debtor has failed and refuses to provide documents concerning any liabilities associated with the gaming license is belied by the fact that Debtor has filed Statements and Schedules and has filed and will continue to file Monthly Operating Reports, both of which disclose Debtor's liabilities, whether associated with its gaming license or otherwise; and,

   d. Movant is concerned about how Debtor's license was obtained. Notwithstanding the fact that Debtor has repeatedly told Movant that it applied for the license and the license was granted, Movant seems to think that is not a sufficient answer. Debtor did not participate in the decision made by the licensor to grant Debtor its license. Debtor does not know what factors were considered by the licensor or whether the licensor threw darts up against a wall to chose its licensee. The only fact that matters is that Debtor does have a written enforceable license to conduct off-track betting which, happily for

            all concerned, will generate sufficient revenues and net income to pay all creditors in full.

24. While not discussed in the Motion, it is important for the Court to understand that Debtor has been in business since 1985. Debtor currently employs 17-18 people.

25. By way of further background, Movant allegedly was working with Debtor to obtain an SBA loan which it failed to accomplish. Movant had not exhibited any concern over the loan until, apparently, Movant became a target of federal regulators. As part of the discussions with Movant, Movant requested (insisted) that Debtor obtain a financial partner who would bring the loan current. The meeting at which this request was made occurred in the morning of a given day and Debtor returned in the afternoon of that same day with a financial partner who was ready, willing and able to pay the loan current. Movant simply did not respond to the offer and proceeded to foreclose on the property.

26. For all of the foregoing reasons, there is no basis in fact or law to dismiss the within bankruptcy proceeding. Certainly, there is no basis to convert the case. This Debtor is as reorganizable as probably any debtor which has been before the Court given the value of its property and its early Chapter 11 financial performance. As stated in previous pleadings filed by undersigned, it should be quite apparent that the Motion is nothing more than a litigation tactic in an attempt to force a settlement which is unfavorable to Debtor.

    WHEREFORE, for the reasons as set forth above, Debtor hereby objects to the Motion to Dismiss, Or In the Alternative, Motion to Convert Case to a Case Under Chapter 7 filed by FirsTier Bank, and requests that the Motion be denied.

DATED: December 22, 2010

                                Respectfully Submitted,

                                WEINMAN & ASSOCIATES, P.C.

                                By: \s\ Jeffrey A. Weinman
                                    Jeffrey A. Weinman, #7605
                                    William A. Richey, #13438
                                    730 17th Street, Suite 240
                                    Denver, CO 80202-3506
                                    Telephone: (303) 572-1010
                                    Facsimile: (303) 572-1011
                                    jweinman@epitrustee.com
                                    wrichey@weinmanpc.com

**CERTIFICATE OF MAILING**

I hereby certify that I have mailed on this 22nd day of December, 2010, a true and correct copy of the foregoing **OBJECTION TO MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO CONVERT CASE TO A CASE UNDER CHAPTER 7** by placing the same in the United States mail, postage prepaid, addressed to:

Alan K. Motes, Esq.
U.S. Trustee's Office
999 18th St., Ste. 1551
Denver, CO 80202

Ball Four, Inc.
Attn: Larry R. Gentry, President
11338 W. 74th Place
Arvada, CO 80005

Neal Dunning, Esq.
Douglas W. Brown, Esq.
Brown Berardini & Dunning, P.C.
2000 S. Colorado Blvd.
Tower Two, Suite 700
Denver, CO 80222

GE Money Bank
Ramesh Singh, Financial Controller
c/o Recovery Management Systems Corp.
25 SE 2nd Ave., Ste. 1120
Miami, FL 33131-1605

\s\ Lisa R. Kraai